FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Dec 11, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID F.,[1] <br>                    Plaintiff, <br><br>     vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>                    Defendant. | No. 1:20-cv-03083-MKD <br><br> ORDER DENYING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND GRANTING <br> DEFENDANT'S MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 15, 17 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 17. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 15, and grants Defendant's motion, ECF No. 17.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER - 5

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 11, 2016, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging an amended

disability onset date of May 1, 2015.[2]  Tr.  16, 68, 204-16.  The applications were

denied initially and on reconsideration.  Tr. 148-54; Tr. 155-61.  Plaintiff appeared

---

[2] Plaintiff previously applied for benefits in August 2013; the claim was denied on

October 7, 2013 and Plaintiff did not appeal the denial.  Tr. 71.

ORDER - 6

before an administrative law judge (ALJ) on March 5, 2019.  Tr. 36-67.  On April

11, 2019, the ALJ denied Plaintiff's claim.  Tr. 13-35.

At step one of the sequential evaluation process, the ALJ found Plaintiff,

who met the insured status requirements through September 30, 2017, has not

engaged in substantial gainful activity since May 1, 2015.  Tr. 19.  At step two, the

ALJ found that Plaintiff has the following severe impairments: intellectual

disorder, depression, anxiety, and alcohol abuse disorder.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  *Id*.  The ALJ then concluded that Plaintiff has the RFC to perform the

full range of work at all exertional levels but with the following nonexertional

limitations:

> [Plaintiff] can understand simple instructions and perform simple
> tasks; he should have no interaction with the public; he can have only
> occasional, cursory interaction with co-workers and normal
> interaction with supervisors.

Tr. 22.

At step four, the ALJ found Plaintiff is unable to perform any of past

relevant work.  Tr. 29.  At step five, the ALJ found that, considering Plaintiff's

age, education, work experience, RFC, and testimony from the vocational expert,

there were jobs that existed in significant numbers in the national economy that

Plaintiff could perform, such as industrial cleaner, hand packager, and warehouse

ORDER - 7

checker. Tr. 30. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the amended alleged onset date of May 1, 2015, through the date of the decision. *Id.*

On April 10, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3. Whether the ALJ properly evaluated Plaintiff's literacy.

ECF No. 15 at 2.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly evaluated the opinions of N.K. Marks, Ph.D.; Jeff Teal, Ph.D.; Charles Miller, M.D.; Peter Weiss, Ph.D.; and John Simonds, M.D. ECF No. 15 at 4-17.

ORDER - 8

1    There are three types of physicians: "(1) those who treat the claimant

2 (treating physicians); (2) those who examine but do not treat the claimant

3 (examining physicians); and (3) those who neither examine nor treat the claimant

4 [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

5 *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

6 Generally, a treating physician's opinion carries more weight than an examining

7 physician's, and an examining physician's opinion carries more weight than a

8 reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight

9 to opinions that are explained than to those that are not, and to the opinions of

10 specialists concerning matters relating to their specialty over that of

11 nonspecialists." *Id.* (citations omitted).

12    If a treating or examining physician's opinion is uncontradicted, the ALJ

13 may reject it only by offering "clear and convincing reasons that are supported by

14 substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

15 "However, the ALJ need not accept the opinion of any physician, including a

16 treating physician, if that opinion is brief, conclusory and inadequately supported

17 by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

18 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

19 examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

20 may only reject it by providing specific and legitimate reasons that are supported

1  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

2  F.3d 821, 830-31 (9th Cir. 1995)).  The opinion of a nonexamining physician may

3  serve as substantial evidence if it is supported by other independent evidence in the

4  record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

5      *1. Dr. Marks*

6      On August 25, 2016, Dr. Marks, an examining source, performed a

7  psychological evaluation and administered the WAIS-IV, and provided an opinion

8  on Plaintiff's functioning.  Tr. 323-30.  Dr. Marks diagnosed Plaintiff with

9  unspecified neurocognitive disorder and a rule out diagnosis of mild intellectual

10 disability, and noted "possible alcohol abuse."  Tr. 325, 330.  Dr. Marks opined

11 Plaintiff had moderate limitations in understanding, remembering, and persisting in

12 tasks by following very short and simple instructions; marked limitations in

13 understanding, remembering, and persisting in tasks by following detailed

14 instructions, performing activities within a schedule, maintaining regular

15 attendance, and being punctual within customary tolerances without special

16 supervision, learning new tasks, performing routine tasks without special

17 supervision, being aware of normal hazards and taking appropriate precautions,

18 and asking simple questions or requesting assistance; and severe limitations in

19 adapting to changes in a routine work setting, making simple work-related

20 decision, communicating and performing effectively in a work setting, maintaining

ORDER - 10

1  appropriate behavior in a work setting, completing a normal workday and work

2  week without interruptions from psychologically based symptoms, and setting

3  realistic goals and planning independently.  Tr. 326.  Dr. Marks further opined

4  Plaintiff's symptoms overall have a severe rating, the impairments are not

5  primarily the result of alcohol/drug abuse, the impairments are permanently

6  limiting, a protective payee is recommended, and vocational training/services

7  would not minimize or eliminate barriers to employment.  *Id.*  The ALJ gave Dr.

8  Marks' opinion little weight.  Tr. 27.  As Dr. Marks' opinion is contradicted by the

9  opinion of Dr. John Simonds, Tr. 45-46, the ALJ was required to give specific and

10  legitimate reasons, supported by substantial evidence, to reject the opinion.  *See*

11  *Bayliss*, 427 F.3d at 1216.

12       First, the ALJ found Dr. Marks' opinion was internally inconsistent.  Tr. 27.

13  Relevant factors to evaluating any medical opinion include the amount of relevant

14  evidence that supports the opinion, the quality of the explanation provided in the

15  opinion, and the consistency of the medical opinion with the record as a whole.

16  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495

17  F.3d 625, 631 (9th Cir. 2007).  Moreover, a physician's opinion may be rejected if

18  it is unsupported by the physician's treatment notes.  *See Connett v. Barnhart*, 340

19  F.3d 871, 875 (9th Cir. 2003).  The ALJ noted Dr. Marks' examination of Plaintiff

20  contained largely normal mental status examination results, which is inconsistent

with the severity of the limitations he assessed.  Tr. 27.  On examination, Plaintiff

had normal speech, was cooperative, relaxed, friendly, open, accepting, and had

good eye contact, and he had normal perception, orientation, thoughts,

concentration, insight and judgement.  Tr. 327-28.  Plaintiff had abnormal

memory, fund of knowledge and abstract thought.  Tr. 328.  While Dr. Marks

opined Plaintiff had severe limitations in his ability to maintain appropriate

behavior in the work setting, his notes reflect Plaintiff's generally normal behavior

during the examination.  Tr. 326-28.  Plaintiff argues Dr. Marks' examination is

consistent with her opinion, and that Dr. Eather and Dr. Robinson opined Dr.

Marks' opinion was supported by Dr. Marks' examination.  ECF No. 15 at 6, ECF

No. 18 at 2.  However, any error in the ALJ's finding that the objective evidence is

not consistent with Dr. Marks' opinion would be harmless as the ALJ gave other

specific and legitimate reasons, supported by substantial evidence, to reject the

opinion.  *See Molina,* 674 F.3d at 1115.

Second, the ALJ found that because Dr. Marks did not provide a sufficient

explanation for her opinion, the opinion appeared to be substantially based on

Plaintiff's self-report.  Tr. 27.  The Social Security regulations "give more weight

to opinions that are explained than to those that are not."  *Holohan*, 246 F.3d at

1202.  "[T]he ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray*, 554 at 1228.  A physician's opinion may also be

rejected if it is too heavily based on a claimant's properly discounted complaints.

*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ found Dr. Marks did not provide a sufficient explanation for the

marked and severe limitations.  Tr. 27.  However, Dr. Marks explained Plaintiff's

full scale IQ places him in the mild intellectual disability range, all of his scores

were in the borderline to extremely low in all areas, and Dr. Marks opined,

"[Plaintiff] will have significantly more difficulty than same-aged peers with

understanding what he hears, with performing hands-on activities, with learning by

watching or by hearing.  His short term memory is weak.  He lacks background

information suggesting that his long-term memory is weak as well."  Tr. 329-30.

Dr. Marks also noted Plaintiff could not complete Part B of the Trail Making test,

suggesting Plaintiff has poor visual-motor planning, poor executive functioning

abilities, he is lacking mental flexibility, he cannot easily maintain two trains of

thought at the same time and will be highly sensitive to distractors around him, and

he will not be able to easily switch to doing things another way once he learns

something one way.  Tr. 330.  The ALJ's finding that Dr. Marks did not offer a

sufficient explanation for his opinion is not supported by substantial evidence.

However, the error is harmless as the ALJ gave other specific and legitimate

ORDER - 13

reasons, supported by substantial evidence, to reject the opinion.  *See Molina,* 674

F.3d at 1115.

Third, the ALJ found Dr. Marks' opinion is inconsistent with Plaintiff's

activities of daily living and ability to previously work.  Tr. 27.  An ALJ may

discount a medical source opinion to the extent it conflicts with the claimant's

daily activities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th

Cir. 1999).  Additionally, "[t]The ALJ may reject a medical opinion that is

inconsistent with the claimant's work activity."  *Schultz v. Berryhill*, No. 3:16-cv-

00757-JR, 2017 WL 2312951, at *4 (D. Or. Apr. 21, 2017) (citing *Valentine v.*

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009)).

The ALJ noted that while Dr. Marks administered an IQ test and found

Plaintiff had an IQ of 66, Plaintiff was able to independently act as a caregiver for

his mother and previously was able to work.  Tr. 27.  Dr. Marks diagnosed Plaintiff

with unspecified neurocognitive disorder and a rule out diagnosis of intellectual

disability, Tr. 325, and discussed Plaintiff's permanent limitations due to his

intellectual disability, Tr. 329-30.  However, Plaintiff was able to work at a

substantial gainful activity level for several years despite his intellectual disability,

Tr. 223.  Plaintiff earned over the substantial gainful activity threshold from 1998

through 2011.  Tr. 217-20.  Plaintiff reported that he moved in with his mother to

help with her care in 2012, Tr. 533, and reported he had not been able to find a job

ORDER - 14

in the town he now resides in, Tr. 534.  An opinion that Plaintiff has permanent

limitations due to his intellectual disability is inconsistent with his ability to engage

in substantial gainful activity for over ten years, and his work only ending when he

moved to take over as the caregiver for his mother.  In his role as a caregiver,

Plaintiff was able to perform the needed tasks including household chores,

cooking, caring for five dogs, shoveling snow, and cutting wood, and Plaintiff

reported walking up to 10 miles daily with his dogs, going fishing, and talking

daily on the phone with a friend.  Tr. 27 (citing Tr. 350, 360, 388, 470, 516-35).

Plaintiff argues Dr. Marks opined Plaintiff has disabling limitations due to a

neurocognitive and intellectual disability and not a mental health impairment, yet

argues his ability to sustain employment prior to the alleged onset date is not a

relevant consideration.  ECF No. 15 at 7, 9.  However, as Plaintiff's neurocognitive

and intellectual disability are permanent conditions that existed prior to the alleged

onset date, Plaintiff's ability to sustain employment despite the very disability he

alleges is now disabling is a relevant consideration.  Plaintiff also contends his

activities are not inconsistent with his reported inability to work.  ECF No. 15 at

10-11.  However, Plaintiff's ability to independently act as a caregiver, coupled

with his previous years of employment, is inconsistent with his allegation of a

disabling intellectual disability.  Plaintiff further contends Dr. Eisenhauer's opinion

supported Dr. Marks' opinion, ECF No. 15 at 6, however Dr. Eisenhauer stated Dr.

ORDER - 15

1  Marks' opinion was not fully supported by the objective evidence, and pointed to

2  Plaintiff's ability to handle self-care, perform chores, prepare meals, care for his

3  mom, use Facebook, and request assistance, Tr. 379.  This was a specific and

4  legitimate reason, supported by substantial evidence, to reject Dr. Marks' opinion.

5  Lastly, the ALJ found Dr. Marks' opinion is contradicted by the opinion of

6  Dr. Simonds.  Tr. 27.  Generally, an ALJ should accord more weight to the opinion

7  of an examining physician than to that of a nonexamining physician.  *See Andrews*,

8  53 F.3d at 1040-41.  However, the opinion of a nonexamining physician may serve

9  as substantial evidence if it is "supported by other evidence in the record and [is]

10 consistent with it."  *Id*. at 1041.  The ALJ gave greater weight to the opinion of Dr.

11 Simonds, who the ALJ noted is familiar with the Social Security program, and who

12 had the opportunity to review the longitudinal record versus Dr. Marks having

13 access to a limited number of records and a single examination.  Tr. 27.  The ALJ

14 found Dr. Simonds is a Board-Certified psychiatrist who gave detailed testimony,

15 and his opinion is consistent with the totality of the record, including Plaintiff's

16 ability to work previously and act as a caregiver for his mother, as well as his

17 improvement with treatment.  Tr. 23-25.  While Plaintiff contends Dr. Simonds'

18 opinion does not directly address several portions of Dr. Marks' opinion, ECF No.

19 18 at 3, Dr. Simonds opined Plaintiff has no more than mild to moderate

20 limitations, and is capable of sustaining simple, routine work, Tr. 44, which

ORDER - 16

1  conflicts with all of Dr. Marks' disabling limitations.  As the ALJ gave other

2  supported reasons to reject Dr. Marks' opinion, the ALJ reasonably gave more

3  weight to the opinion of Dr. Simonds than he gave to Dr. Marks' opinion.  As

4  such, the ALJ gave specific and legitimate reasons, supported by substantial

5  evidence, to reject Dr. Marks' opinion.

6      *2.  Dr. Teal*

7      On April 19, 2018 and February 22, 2019, Dr. Teal, a treating psychologist,

8  diagnosed Plaintiff with major depressive disorder, alcohol use disorder, and

9  cognition disorder.  Tr. 436, 545.  Dr. Teal opined Plaintiff's cognition disorder

10  appeared to be the primary disorder impacting Plaintiff's ability to work.  *Id.*  In

11  April 2018, Dr. Teal further opined Plaintiff has: mild limitations in carrying out

12  very short simple instructions, performing activities within a schedule, maintaining

13  regular attendance and being punctual within customary tolerances, working in

14  coordination with or proximity to others without being distracted by them,

15  completing a normal workday/workweek without interruptions from

16  psychologically based symptoms and performing at a consistent pace without an

17  unreasonable number/length of rest periods, asking simple questions or requesting

18  assistance, and responding appropriately to changes in the work setting; moderate

19  limitations in remembering locations and work-like procedures,

20  understanding/remembering very short simple instructions, carrying out detailed

ORDER - 17

instructions, sustaining an ordinary routine without special supervision, making

simple work-related decisions, interacting appropriately with the general public,

accepting instructions and responding appropriately to criticism from supervisors,

getting along with coworkers/peers without distracting them or exhibiting

behavioral extremes, maintaining socially appropriate behavior and adhering to

basic standards of neatness/cleanliness, being aware of normal hazards and taking

appropriate precautions; and marked limitations in understanding and remembering

detailed instructions, maintaining attention/concentration for extended periods,

traveling in unfamiliar places or using public transportation, and setting realistic

goals or making plans independently of others.  Tr. 433-35.  Regarding the "B"

criteria, Dr. Teal opined Plaintiff has moderate limitations in understanding,

remembering, or applying information, interacting with others, concentrating,

persisting or maintaining pace, and adapting or managing oneself; he opined

Plaintiff has minimal capacity to adapt to changes in his environment or to

demands that are not already part of his daily life, he would be off-task 21 to 30

percent of time, and Plaintiff would miss two days per month if he worked full-

time.  Tr. 435.  In February 2019, Dr. Teal rendered a similar opinion.  Tr. 542-44.

The ALJ gave Dr. Teal's opinions little weight.  Tr. 26.  As Dr. Teal's opinion is

contradicted by the opinion of Dr. Simonds, Tr. 45-46, the ALJ was required to

ORDER - 18

give specific and legitimate reasons, supported by substantial evidence, to reject

the opinion.  *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found that because Dr. Teal's opinions consisted of a

checkbox form that did not contain any objective findings, the opinions appeared

to be based substantially on Plaintiff's self-report.  Tr. 26.  A medical opinion may

be rejected by the ALJ if it is conclusory or inadequately supported.  *Bray*, 554

F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  For this

reason, individual medical opinions are preferred over check-box reports.  *Crane v.*

*Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501

(9th Cir. 1983).  However, if treatment notes are consistent with the opinion, a

conclusory opinion, such as a check-the-box form, may not automatically be

rejected.  *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo v. Berryhill*, 871

F.3d 664, 677 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box'

form is any less reliable than any other type of form").  A physician's opinion may

also be rejected if it is too heavily based on a claimant's properly discounted

complaints.  *Tonapetyan*, 242 F.3d at 1149.

The ALJ noted that Dr. Teal did not cite to any objective findings as the

basis for his opinion.  Tr. 26.  Further, the ALJ found Dr. Teal's treatment records

do not support his opinion, as records showed Plaintiff's symptoms improved with

treatment.  *Id.* (citing Tr. 407).  Plaintiff contends Dr. Teal's treatment records are

ORDER - 19

consistent with his opinion, as he conducted a cognitive screening that

demonstrated deficits, and he opined that while Plaintiff had improvement in his

depression and alcohol use, his primary limiting condition is his cognition disorder.

ECF No. 15 at 11-12 (citing Tr. 359).  While Dr. Teal noted the screening

indicated Plaintiff's deficits include executive functioning and memory deficits,

and he would benefit from simple language and written instructions, Tr. 359, there

is no explanation as to why Plaintiff would have limitations in his ability to interact

with the public, get along with coworkers/peers, or several other areas of

functioning Dr. Teal identified.  While Dr. Teal noted some abnormalities at his

initial visit with Plaintiff, such as poor eye contact, the treatment notes do not

contain evidence that support Dr. Teal's opinion that Plaintiff has multiple marked

limitations.  Tr. 360.  Given the lack of objective evidence to support his opinion,

the ALJ reasonably found Dr. Teal's opinions too heavily relied on Plaintiff's self-

report.  This was a specific and legitimate reason, supported by substantial

evidence, to reject Dr. Teal's opinions.

Second, the ALJ found Dr. Teal's opinion relied on Plaintiff's discredited

self-report.  Tr. 26.  A physician's opinion may be rejected if it is too heavily based

on a claimant's properly discounted complaints. *Tonapetyan*, 242 F.3d at 1149.

As Dr. Teal did not cite to objective evidence nor provide an explanation to

support his opinion that Plaintiff has limitations in multiple areas of functioning,

including social functioning, the ALJ found the opinion relied on Plaintiff's self-report. Tr. 26. Because the ALJ rejected the Plaintiff's statements for clear and convincing reasons, as discussed *supra,* this was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Teal's opinion.

Third, the ALJ found Dr. Teal's opinions were inconsistent with Plaintiff's activities of daily living and work history. Tr. 26. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02. Additionally, "[t]The ALJ may reject a medical opinion that is inconsistent with the claimant's work activity." *Schultz*, No. 3:16-cv-00757-JR, 2017 WL 2312951, at *4 (citing *Valentine*, 574 F.3d at 692-93). The ALJ noted Dr. Teal's opinion appears to conflict with Plaintiff's own statements, as Plaintiff admitted he would be able to work in the fast food industry. Tr. 26 (citing Tr. 460). The ALJ also found Dr. Teal's opinion was inconsistent with Plaintiff's ability to work in unskilled jobs in the past, act as a caregiver for his mother, and to engage in a variety of daily activities including walking up to 10 miles daily and going fishing. Tr. 26. As discussed *supra,* Plaintiff's ability to work, act as a caregiver, and engage in an array of daily activities is inconsistent with disabling limitations due to an intellectual disability. This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Teal's opinion.

ORDER - 21

1    Fourth, the ALJ gave more weight to the opinion of Dr. Simonds than he

2  gave to the opinions of Dr. Teal.  Tr. 27.  Generally, an ALJ should accord more

3  weight to the opinion of an examining physician than to that of a nonexamining

4  physician.  *See Andrews*, 53 F.3d at 1040-41.  However, the opinion of a

5  nonexamining physician may serve as substantial evidence if it is "supported by

6  other evidence in the record and [is] consistent with it."  *Id*. at 1041.  The ALJ

7  noted Dr. Simonds had the opportunity to review the longitudinal record, versus

8  Dr. Teal who only had access to limited records, and unlike Dr. Teal, Dr. Simonds

9  is familiar with the Social Security program and rules.  Tr. 26-27.  As the ALJ gave

10  other supported reasons to reject Dr. Teal's opinion, the ALJ reasonably gave more

11  weight to the opinion of Dr. Simonds than he gave to Dr. Teal's opinion.

12    Lastly, the ALJ noted Dr. Teal did not specify whether his opinion that

13  Plaintiff would be off task applied to skilled or unskilled work.  Tr. 26.  Plaintiff

14  contends the ALJ erred in his analysis because Dr. Teal's opinion indicates

15  Plaintiff would be off-task 30 percent of the time regardless of skill level.  ECF

16  No. 15 at 12-13.  However, any error would be harmless as the ALJ gave other

17  specific and legitimate reasons, supported by substantial evidence, to reject Dr.

18  Teal's opinion.  *See Molina,* 674 F.3d at 1115.

19

20

~

ORDER - 22

*3. Dr. Miller*

On June 25, 2018, Dr. Miller, a treating physician, rendered an opinion on Plaintiff's functioning. Tr. 437-38. Dr. Miller diagnosed Plaintiff with depression, hypertension, insomnia, alcohol abuse, anger, history of learning disability, smoking tobacco dependence, and mild intellectual disability. Tr. 437. Dr. Miller opined Plaintiff is unable to maintain employment due to his intellectual disability and emotional lability; working would cause Plaintiff's condition to deteriorate because it would cause frustration, depression, and anger lability due to intellectual limitations; Plaintiff is unable to manage his own finances or shop without assistance; and Plaintiff would miss four or more days per month if he worked full-time. Tr. 437-38. The ALJ gave Dr. Miller's opinion little weight. Tr. 26. As Dr. Miller's opinion is contradicted by the opinion of Dr. Simonds, Tr. 45-46, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject the opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Miller rendered an opinion on a subject outside of his expertise. Tr. 26. A medical provider's specialization is a relevant consideration in weighing medical opinion evidence. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). While the ALJ may give more weight to a specialist, it is error for the ALJ to reject a treating physician's opinions solely based on this reasoning. *Sprague*, 812 F.2d at 1231 (recognizing that the treating physician was qualified to

ORDER - 23

1  give a medical opinion as to the claimant's mental state despite not being a

2  psychiatrist).  The ALJ noted Dr. Miller is a primary care physician, and not a

3  psychiatrist or psychologist, yet he rendered an opinion on Plaintiff's mental

4  functioning.  Tr. 26.  Plaintiff contends the ALJ erred in considering Dr. Miller's

5  specialty, ECF No. at 13, however the ALJ reasonably considered Dr. Miller's

6  specialty when weighing his opinion, and gave other reasons to reject the opinion.

7  The ALJ also gave more weight to Dr. Simonds, the Board-Certified psychiatrist

8  who testified at the hearing.  Tr. 26.  The ALJ reasonably gave more weight to the

9  psychological opinion of a psychiatrist over a primary care physician.  As such,

10  this was a specific and legitimate reason to reject Dr. Miller's opinion.

11  Second, the ALJ found Dr. Miller's opinion is inconsistent with the

12  objective evidence, including his own examination notes.  Tr. 26.  A medical

13  opinion may be rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at

14  1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at

15  1149; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Furthermore, a

16  physician's opinion may be rejected if it is unsupported by the physician's

17  treatment notes.  *Connett*, 340 F.3d at 875.  The ALJ found Dr. Miller's opinion is

18  inconsistent with his own notes, which reflect a largely normal mental status

19  examination, as well as the record as a whole, which demonstrated improvement

20  with treatment.  Tr. 26 (citing Tr. 407, 444-51).  Dr. Miller's examination notes

1  indicate Plaintiff had normal orientation, speech, memory, attention, fund of

2  knowledge, judgment/insight, thoughts, and thoughts, and only mildly dysthymic

3  mood with congruent affect.  Tr. 441-42.  Dr. Miller's other notes contain minimal

4  evidence of abnormal mental/cognitive functioning.  In July 2017, Plaintiff was

5  oriented, with a quiet affect and dysthymic mood, but normal judgment, and

6  thoughts.  Tr.418.  In May 2018, Plaintiff denied anxiety and depression, he was

7  well-groomed, and in no acute distress.  Tr. 481-82.  In October 2018, Plaintiff had

8  a euthymic mood with appropriate and congruent affect, normal associations, he

9  was well-groomed, alert, and oriented.  Tr. 507.  During a visit with Dr. Teal,

10  Plaintiff reported sleeping better, being less restless/fidgety and irritable, and

11  getting along reasonably well with his cousin and mother since resuming

12  Sertraline.  Tr. 407.  The ALJ also noted Dr. Miller appeared to rely on Dr. Marks'

13  opinion, although the ALJ found Dr. Marks' opinion was based on a largely

14  normal mental status examination.  Tr. 27.  As discussed *supra,* Dr. Marks'

15  examination contained some abnormalities, however any error in the ALJ's

16  consideration of Dr. Miller's reliance on Dr. Marks' opinion/examination is

17  harmless as the ALJ gave other specific and legitimate reasons, supported by

18  substantial evidence, to reject Dr. Miller's opinion.  *See Molina,* 674 F.3d at 1115.

19       Third, the ALJ found Dr. Miller's opinion is inconsistent with Plaintiff's

20  activities of daily living and work history.  Tr. 26.  An ALJ may discount a medical

ORDER - 25

source opinion to the extent it conflicts with the claimant's daily activities.

*Morgan,* 169 F.3d at 601-02.  Additionally, "[t]The ALJ may reject a medical

opinion that is inconsistent with the claimant's work activity."  *Schultz*, No. 3:16-

cv-00757-JR, 2017 WL 2312951, at *4 (citing *Valentine*, 574 F.3d at 692-93).  The

ALJ found Dr. Miller's opinion is inconsistent with Plaintiff's activities, including

caregiving for his mother.  Tr. 26.  The ALJ found Dr. Miller's opinion is

inconsistent with the totality of the evidence, while Dr. Simonds' opinion is more

consistent with the evidence, including Plaintiff's ability to previously work.  Tr.

24, 26.  As discussed *supra,* Plaintiff's activities and work history are inconsistent

with disabling limitations due to an intellectual disability.  This was a specific and

legitimate reason to reject Dr. Miller's opinion.

Lastly, the ALJ gave more weight to the opinion of Dr. Simonds than to Dr.

Miller's opinion.  Tr. 26.  Generally, an ALJ should accord more weight to the

opinion of an examining physician than to that of a nonexamining physician.  *See*

*Andrews*, 53 F.3d at 1040-41.  However, the opinion of a nonexamining physician

may serve as substantial evidence if it is "supported by other evidence in the record

and [is] consistent with it."  *Id*. at 1041.  The ALJ gave more weight to the opinion

of Dr. Simonds, a Board-Certified psychiatrist, who reviewed the longitudinal

record, and provided specific citations to the record to support his opinion.  Tr. 26.

As the ALJ gave other supported reasons to reject Dr. Miller's opinion, the ALJ

ORDER - 26

1    reasonably gave more weight to the opinion of Dr. Simonds than he gave to Dr.

2    Miller's opinion.

3       *4. Dr. Weiss*

4       On August 23, 2018, Dr. Weiss, an examining psychologist, examined

5    Plaintiff and gave an opinion on his functioning.  Tr. 537-40.  Dr. Weiss diagnosed

6    Plaintiff with depression, intellectual disability, and noted alcohol use disorder as a

7    rule out diagnosis.  Tr. 538.  Dr. Weiss opined Plaintiff has no to mild limitations

8    in performing routine tasks without special supervision, making simple work-

9    related decisions, being aware of normal hazards and taking appropriate

10   precautions, and asking simple questions or requesting assistance; moderate

11   limitations in adapting to changes in a routine work setting, and maintaining

12   appropriate behavior in a work setting; marked limitations in learning new tasks;

13   and severe limitations in understanding, remembering, and persisting in tasks by

14   following detailed instructions, performing activities within a schedule,

15   maintaining regular attendance, and being punctual within customary tolerances

16   without special supervision, communicating and performing effectively in a work

17   setting, completing a normal workday/workweek without interruptions from

18   psychological symptoms, and setting realistic goals and planning independently.

19   Tr. 538-39.  The ALJ gave Dr. Weiss' opinion little weight.  Tr. 25.  As Dr. Weiss'

20   opinion is contradicted by the opinion of Dr. Simonds, Tr. 45-46, the ALJ was

ORDER - 27

1  required to give specific and legitimate reasons, supported by substantial evidence,

2  to reject the opinion.  *See Bayliss*, 427 F.3d at 1216.

3         First, the ALJ found Dr. Weiss' opinion was internally inconsistent.  Tr. 25.

4  Relevant factors to evaluating any medical opinion include the amount of relevant

5  evidence that supports the opinion, the quality of the explanation provided in the

6  opinion, and the consistency of the medical opinion with the record as a whole.

7  *Lingenfelter,* 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Moreover, a physician's

8  opinion may be rejected if it is unsupported by the physician's treatment notes.

9  *See Connett*, 340 F.3d at 875.   The ALJ found Dr. Weiss' opinion was inconsistent

10  with his examination of Plaintiff, which contained "largely normal mental status

11  examination" findings.  Tr. 25.  On examination, Plaintiff had normal appearance,

12  speech, attitude/behavior, thoughts, orientation, perception, memory,

13  insight/judgment, and abstract thought, but had a depressed mood, dysthymic

14  affect, and abnormal fund of knowledge and concentration.  Tr. 539-40.  Although

15  Plaintiff had normal behavior during the examination, Dr. Weiss opined Plaintiff

16  had moderate limitations in maintaining appropriate behavior in a work setting.

17  Tr. 538, 540.  Although Plaintiff had normal insight, judgment, thoughts,

18  perception, and memory on examination, Dr. Miller opined Plaintiff had severe

19  limitations in his ability to set realistic goals and plan independently.  Tr. 538, 540.

20  While Plaintiff argues Dr. Weiss reviewed Dr. Marks' opinion which provided

ORDER - 28

support for Dr. Weiss' opinion, ECF No. 15 at 15, `the ALJ reasonably found Dr. Miller's opinion is inconsistent with his own examination.  This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Miller's opinion.

Second, the ALJ found Dr. Weiss did not provide a sufficient explanation for his opinion, the opinion appeared to be substantially based on Plaintiff's self-report.  Tr. 25.  The Social Security regulations "give more weight to opinions that are explained than to those that are not."  *Holohan*, 246 F.3d at 1202.  "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 at 1228.  The Ninth Circuit in *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) contemplated that medical sources rely on self-reports to varying degrees and held that an ALJ may reject a medical source's opinion as based on unreliable self-reports only when the medical source relied "more heavily" "on a patient's self-reports than on clinical observations."  763 F.3d at 1162.  A physician's opinion may be rejected if it is too heavily based on a claimant's properly discounted complaints.  *Tonapetyan*, 242 F.3d at 1149.  The ALJ noted Dr. Weiss did not provide a sufficient explanation for his opinion that Plaintiff has multiple marked and severe limitations.  Tr. 25.  While Dr. Weiss' examination notes some abnormalities, there is no explanation that ties the abnormalities to his opinion, nor is there any explanation for the limitations that appear to correlate to

normal examination findings.  Additionally, while Plaintiff alleges he is

permanently disabled due to an intellectual disability and not a mental health

condition, Dr. Weiss opined Plaintiff's limitations would last 12 months, and there

is no explanation as to why the limitations would only last 12 months.  Tr. 539.

Given the lack of explanation or citation to objective evidence to support his

opinion, the ALJ reasonably found Dr. Weiss' opinion was substantially based on

Plaintiff's self-report.  This was a specific and legitimate reason, supported by

substantial evidence, to reject Dr. Weiss' opinion.

Third, the ALJ gave more weight to the opinion of Dr. Simonds than to Dr.

Weiss' opinion.  Tr. 25-26.  Generally, an ALJ should accord more weight to the

opinion of an examining physician than to that of a nonexamining physician.  *See*

*Andrews*, 53 F.3d at 1040-41.  However, the opinion of a nonexamining physician

may serve as substantial evidence if it is "supported by other evidence in the record

and [is] consistent with it."  *Id*. at 1041.  The ALJ gave more weight to the opinion

of Dr. Simonds, who is familiar with the Social Security regulations and who

reviewed the longitudinal record rather than Dr. Weiss, who had access to only a

limited amount of records and his own examination.  Tr. 25.  As the ALJ gave

other supported reasons to reject Dr. Weiss' opinion, the ALJ reasonably gave

more weight to the opinion of Dr. Simonds than he gave to Dr. Weiss' opinion.

ORDER - 30

1    *5. Dr. Simonds*

2    Dr. Simonds, a reviewing medical expert, testified and rendered an opinion

3    on Plaintiff's functioning at the hearing. Tr. 38-49. Dr. Simonds opined Plaintiff's

4    diagnosis of cognitive disorder was nonspecific and too vague, there is evidence

5    of a borderline IQ and history of learning disability but Plaintiff has been able to

6    perform simple work in the past, he has mostly experienced situational anxiety,

7    depressive disorder improved to full remission with medication, and he does not

8    see evidence to support the diagnosis of a personality disorder. Tr. 43. He opined

9    Plaintiff has moderate impairments in comprehension/understanding, mild to

10   moderate impairment in social interaction, mild impairment in concentration, and

11   mild to moderate impairment in adaptability. Tr. 44. He further opined Plaintiff

12   would be capable of simple, repetitive tasks, with superficial or no contact with the

13   public and superficial, occasional contact with coworkers. *Id.* Dr. Simonds opined

14   Plaintiff's symptoms were worse earlier on during the relevant time period when

15   Plaintiff's alcohol use was a significant problem, Tr. 47, and Plaintiff's social

16   functioning improved to mild over time, Tr. 45-46. When asked if Dr. Simonds

17   agreed with Dr. Teal's opinion that Plaintiff would be off task 21 to 30 percent of

18   the time, given his intellectual disability, Dr. Simonds stated, "Well, yea. He has

19   intellectual disability, but he doesn't meet a listing for it." Tr. 49. Plaintiff's

20   counsel followed up, clarifying he was not asking about a listing, but whether Dr.

ORDER - 31

Simonds agreed Plaintiff would be off task in the 20 percent range, to which Dr.

Simonds responded Plaintiff would be off task more often for complex jobs, and he

would be off task less for medium complexity jobs. Tr. 49. Plaintiff's counsel

asked if Plaintiff would be off task 10 to 20 percent of the time, and Dr. Simonds

responded, "It would be less. Maybe 10. I don't know. I can't give you a figure

on that. It's not going to be 20 percent." *Id.* The ALJ gave Dr. Simonds' opinion

great weight. Tr. 24. As Dr. Simonds is a non-examining source, the ALJ must

consider the opinion and whether it is consistent with other independent evidence

in the record. *See* 20 C.F.R. §§ 404.1527(b),(c)(1), 416.927(b),(c)(1); *Tonapetyan,*

242 F.3d at 1149; *Lester*, 81 F.3d at 830-31.

Plaintiff contends the ALJ erred by rejecting Dr. Simonds' opinion that

Plaintiff would be off task "maybe" 10 percent of the time. ECF No. 15 at 15-16.

Plaintiff argues Dr. Simonds' opinion was disabling as the vocational expert

testified that an individual who is off task 10 percent or more of the time in an

unskilled work environment is not likely to maintain employment. *Id.* at 16 (citing

Tr. 64-65). However, Dr. Simonds stated he could not give a specific answer as to

the amount of time Plaintiff would be off-task, and stated Plaintiff would only

"maybe" be off task 10 percent of the time. Tr. 49. As Dr. Simonds testified

Plaintiff could sustain simple, routine work, Tr. 44, and otherwise stated he could

not give a specific amount of time Plaintiff would be off task, Plaintiff's argument

ORDER - 32

1  that Dr. Simonds gave a disabling opinion is not supported by the evidence.  As

2  such, the ALJ did not reject Dr. Simonds.

3       In summary, the ALJ gave specific and legitimate reasons, supported by

4  substantial evidence, to reject the opinions of Dr. Marks, Dr. Teal, Dr. Miller, and

5  Dr. Weiss, and did not reject Dr. Simonds' opinion.  Plaintiff is not entitled to

6  remand on these grounds.

7  **B. Plaintiff's Symptom Claims**

8       Plaintiff faults the ALJ for failing to rely on reasons that were clear and

9  convincing in discrediting his symptom claims.  ECF No. 15 at 17-20.  An ALJ

10 engages in a two-step analysis to determine whether to discount a claimant's

11 testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

12 "First, the ALJ must determine whether there is objective medical evidence of an

13 underlying impairment which could reasonably be expected to produce the pain or

14 other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

15 "The claimant is not required to show that [the claimant's] impairment could

16 reasonably be expected to cause the severity of the symptom [the claimant] has

17 alleged; [the claimant] need only show that it could reasonably have caused some

18 degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

19      Second, "[i]f the claimant meets the first test and there is no evidence of

20 malingering, the ALJ can only reject the claimant's testimony about the severity of

1   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

2   rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted).  General findings are

3   insufficient; rather, the ALJ must identify what symptom claims are being

4   discounted and what evidence undermines these claims.  *Id.* (quoting *Lester*, 81

5   F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain

6   why it discounted claimant's symptom claims)).  "The clear and convincing

7   [evidence] standard is the most demanding required in Social Security cases."

8   *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r*

9   *of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

10          Factors to be considered in evaluating the intensity, persistence, and limiting

11   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

12   duration, frequency, and intensity of pain or other symptoms; 3) factors that

13   precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

14   side effects of any medication an individual takes or has taken to alleviate pain or

15   other symptoms; 5) treatment, other than medication, an individual receives or has

16   received for relief of pain or other symptoms; 6) any measures other than treatment

17   an individual uses or has used to relieve pain or other symptoms; and 7) any other

18   factors concerning an individual's functional limitations and restrictions due to

19   pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

20   416.929(c), 404.1529(c).  The ALJ is instructed to "consider all of the evidence in

ORDER - 34

1  an individual's record," to "determine how symptoms limit ability to perform

2  work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

3       The ALJ found that Plaintiff's medically determinable impairments could

4  reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

5  statements concerning the intensity, persistence, and limiting effects of his

6  symptoms were not entirely consistent with the evidence.  Tr. 22.

7       *1. Objective Medical Evidence*

8       The ALJ found Plaintiff's symptom claims are inconsistent with the

9  objective evidence.  *Id.*  An ALJ may not discredit a claimant's symptom

10 testimony and deny benefits solely because the degree of the symptoms alleged is

11 not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853,

12 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

13 *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d

14 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant

15 factor, along with the medical source's information about the claimant's pain or

16 other symptoms, in determining the severity of a claimant's symptoms and their

17 disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2),

18 416.929(c)(2).

19      The ALJ noted that while Plaintiff's condition has waxed and waned over

20 the years, the objective evidence as a whole is inconsistent with Plaintiff's

symptom claims.  Tr. 23.  In May 2015, Plaintiff reported feeling better and he had

normal memory, mood, and affect.  *Id.* (citing Tr. 365-66).  Plaintiff received

limited mental health treatment until he was evaluated by Dr. Teal in May 2016,

during which Plaintiff's primary complaint was an inability to secure employment.

Tr. 23.  On examination, Plaintiff demonstrated some abnormalities, including

poor eye contact and poor but understandable articulation of speech.  *Id.* (citing Tr.

360-61).  In July 2016, Plaintiff had abnormal memory, but after Plaintiff's

medication was adjusted, Plaintiff had normal affect, and an improved PHQ-9

score.  Tr. 23 (citing Tr. 348, 358).  After a period of medication non-compliance,

Plaintiff resumed his medication and his PHQ-9 score again improved in April

2017, and his depression was noted as in full remission in July 2017.  Tr. 23 (citing

Tr. 407, 415).  In April and May 2018, Plaintiff's depression remained in

remission, and Plaintiff had unremarkable mental status examinations.  Tr. 23

(citing Tr. 470, 485, 487, 490, 492).  Dr. Miller's June 2018 examination was

largely normal.  Tr. 26 (citing Tr. 442).  Dr. Weiss' examination in August 2018

was also largely normal.  Tr. 25 (citing Tr. 540).

        The ALJ also found Plaintiff had improvement with treatment and

medication.  Tr. 23.  The effectiveness of treatment is a relevant factor in

determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006

(9th Cir. 2006) (determining that conditions effectively controlled with medication

are not disabling for purposes of determining eligibility for benefits); *Tommasetti*

*v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable

response to treatment can undermine a claimant's complaints of debilitating pain or

other severe limitations).  Plaintiff's depression related symptoms improved when

he consistently took his medication, and after a medication adjustment.  *Id.* (citing

Tr. 348, 358, 407, 415).  Plaintiff's depression was noted as in full remission in

July 2017 and continued to be in remission through 2018, and the mental status

examinations during the same time period were largely normal.  Tr. 23 (citing Tr.

407, 415, 470, 485, 487, 490, 492).  While Plaintiff offers an alternate

interpretation of the evidence, ECF No. 15 at 19-20, the ALJ reasonably concluded

that Plaintiff's symptom claims are inconsistent with the objective evidence,

including Plaintiff's improvement with treatment.  This finding is supported by

substantial evidence and was a clear and convincing reason, along with the other

reasons offered, to discount Plaintiff's symptom complaints.

### 2. *Work History*

The ALJ found Plaintiff's allegations are inconsistent with his work history.

Tr. 22-23.  Working with an impairment supports a conclusion that the impairment

is not disabling.  *See Drouin*, 966 F.2d at 1258; *see also Bray*, 554 F.3d at 1227

(seeking work despite impairment supports inference that impairment is not

ORDER - 37

disabling).  Despite Plaintiff's allegation that his permanent intellectual disability is the reason he is unable to work, Plaintiff was able to work at a substantial gainful activity level in the past.  Tr. 26.  Plaintiff earned over the substantial gainful activity threshold from 1998 through 2011.  Tr. 217-20.  Plaintiff reported that he moved in with his mother to help with her care in 2012, Tr. 533, and reported he had not been able to find a job in the town he now resides in, Tr. 534.  Additionally, Plaintiff's own perception of his ability to work is a proper consideration in determining credibility.  *See* Cause No. 2:16-cv-00402-MKD, *Barnes v. Comm'r of Soc. Sec.*, 2018 WL 545722 (E.D. Wash. Jan. 24, 2018) ("Evidence of Plaintiff's preparedness to return to work, even if an optimistic self-assessment, is significant to the extent that the Plaintiff is willing and able to work, as that belief indicates her allegation of symptoms precluding work are not credible.").  The ALJ noted Plaintiff reported he could work in a fast food restaurant, but he felt he would not be hired because of his age, and he reported job hunting after the alleged onset date but did not get any interviews.  Tr. 23 (citing Tr. 358, 360, 367, 460).

Plaintiff also reported transportation was a barrier to employment.  Tr. 23 (citing Tr. 360).  The ALJ also may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition when weighing the claimant's symptom reports.  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir.

ORDER - 38

2001).  Plaintiff reported that he moved in with his mother to help with her care in 2012, Tr. 533, and reported he had not been able to find a job in the town he now resides in, Tr. 534.  Plaintiff reported he relied on his mother for transportation, and it would be difficult for him to find transportation to work.  Tr. 360.

The ALJ also noted Plaintiff had no earnings from 2013 onward, although his alleged onset date is in 2015, which calls into question whether Plaintiff's unemployment is due to his impairments.  Tr. 22-23.  On this record, the ALJ reasonably concluded that Plaintiff's symptom claims are inconsistent with his work history, particularly his ability to work at over the substantial gainful activity level for over ten years in the past despite his intellectual disability.  *See Drouin*, 966 F.2d at 1258; *see also Bray,* 554 F.3d at 1227.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

*3.  Activities of Daily Living*

The ALJ found Plaintiff's symptom claims are inconsistent with his activities of daily living.  Tr. 23.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*,

ORDER - 39

674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ found Plaintiff has acted as an independent caregiver for his elderly and disabled mother, which required Plaintiff handle cooking, chores, caring for five dogs, shoveling show, and cutting wood, and Plaintiff also reported walking up to 10 miles daily with his dog, going fishing, and talking daily with a friend. Tr. 23 (citing Tr. 350, 360, 388, 470, 516-35). Plaintiff reported his mother is "very difficult," but he was generally able to get along with her, and he spent time with his nephew and nephew's friends. Tr. 20, 299, 305, 406, 421, 493, 534. He also reported interacting with others by phone and social media. Tr. 20, 358, 470, 485. Plaintiff was able to spend the day watching movies, attend appointments independently, and job hunt. Tr. 20, 23. There are also references to Plaintiff assisting firefighters with their camps and neighbors with projects. Tr. 300, 360. While Plaintiff argues his activities are not inconsistent with his allegations, ECF No. 15 at 18, as discussed *supra,* Plaintiff's activities are inconsistent with disabling limitations due to an intellectual disability.

On this record, the ALJ reasonably concluded that Plaintiff's symptom claims are inconsistent with his activities of daily living.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints. Plaintiff is not entitled to remand on these grounds.

## C. Plaintiff's Literacy

Plaintiff contends the ALJ erred in his consideration of Plaintiff's literacy. ECF No. 15 at 21-22.  Under the Social Security regulations, "illiteracy" is defined as "the inability to read or write," 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1), while the "ability to communicate in English" is defined as "the ability to speak, read and understand English," 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5).  The Ninth Circuit has held that these two requirements "will have inevitable overlap," as "[i]t is reasonable . . . to assume that one who is unable to speak and understand English will also be unable to read and write English."  *Chavez v. Dep't of Health and Human Services*, 103 F.3d 849, 852 (9th Cir. 1996).  In assessing illiteracy, only the ability to read or write in English is considered for Social Security Administration (SSA) disability purposes.  *See id*.  The SSA considers a claimant illiterate if he or she "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name."  20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1).  Further, an illiterate person generally "has had

little or no formal schooling." *Id.*  Depending on the claimant's age, impairments, and past work experience, illiteracy may render a claimant disabled.  *See generally* 20 C.F.R. App'x 2 to Subpart P of Part 404.

Plaintiff alleges the ALJ failed to consider his illiteracy but points only to a sentence where Plaintiff wrote a word that was not readable as evidence of illiteracy.  ECF No. 15 at 20-21.  Plaintiff completed school through the ninth grade.  Tr. 50.  Despite his allegation that he cannot read or write, Plaintiff reports using social media and texting on his phone.  Tr. 324, 354, 379, 485.  In his disability report, Plaintiff stated he can read and understand English, and he can write more than his name in English.  Tr. 246.  During a cooperative disability investigative unit investigation, Plaintiff was able to read three names out loud without hesitation.  Tr. 535.  During medical visits, Plaintiff reported that "[h]e is able to read, but has trouble comprehending what he is reading, and reported that he cannot "read very well," but did not report illiteracy.  Tr. 401, 439.  At his hearing, when discussing his poor eyesight, Plaintiff's counsel asked if Plaintiff's problems have mostly been because of his "limited ability to like read and write," to which Plaintiff responded, "read and write."  Tr. 54.  Plaintiff's counsel then said, "Read instructions, understand things, do complicated work . . .", and then changed the topic.  Tr. 54.  Plaintiff did not testify to any specific difficulties such as reading instructions.

ORDER - 42

As Plaintiff did not allege in his disability report that he is illiterate, and there is substantial evidence in the record that demonstrates Plaintiff is literate, the ALJ did not error in failing to consider Plaintiff's alleged illiteracy.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED December 11, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 43